## Case No. 17,629.

### WIGHT v. MUXLOW et al.

### [S Ben. 52.] [1]

District Court. S. D. New York. March, 1875.

BANKRUPTCY—INTENT TO GIVE PREFERENCE—SUFFERING JUDGMENT TO BE ENTERED—AFFIRMATIVE ACT—ATTORNEY AND CLIENT.

1. The intent of an insolvent to give preference to a creditor is to be inferred only from some positive or affirmative act. The mere fact that the insolvent has remained passive during legal proceedings, affording no facilities and interposing no hindrance to the creditor's obtaining a lien by judgment and execution, and at the same time neither hindering nor facilitating other creditors, is not sufficient to authorize an inference of an intent to give a preference.

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

2. Where a debtor does a positive act, the consequences of which he knows beforehand, he must be held to intend those consequences. Where a debtor is sued for a just debt, and interposes a groundless defence, in such manner that another creditor, who brings suit later, is enabled to obtain a prior judgment and the appointment of a receiver, an intent to give a preference to the creditor in the latter suit must be inferred.

3. An attorney defended for the debtor a suit on a just debt, knowing that the debtor was insolvent, and he also obtained, as attorney for another creditor a judgment by default against such debtor in a suit brought later, before judgment could be obtained in the prior suit: *Held*, that the attorney had reasonable cause to believe that the debtor intended to give a preference to the creditor in the later suit, and his knowledge was to be imputed to his client.

On May 20th, 1873, Muxlow, one of the defendants in this suit, recovered a judgment in the supreme court of the state of New York against William W. Hulst for $1,025.63. The suit was commenced by the service on Hulst, on April 28th, 1873, of a summons, without a complaint, by George W. Niles, one of the firm of Niles & Sherman, who were plaintiff's attorneys in the suit. The suit was brought on a promissory note for $1,000 made by Hulst on April 25th, 1873, and payable to the bearer on demand. No answer, demurrer or notice of appearance was served in the suit, and on proof of that fact the judgment was entered as above stated. Within an hour after the entry of the judgment an execution was issued to the sheriff of the city and county of New York, which on the 23rd of May was returned, with the return endorsed: "No personal or real property." Thereupon Hulst was examined in proceedings supplementary to execution, and on the 26th of May the defendant Daniel Adee was appointed receiver of the property of Hulst and he immediately took possession thereof. On May 27th, 1873, a petition in involuntary bankruptcy was filed in this court against Hulst. In those proceedings the plaintiff in this suit [Charles H. Wight] was elected assignee. He filed this bill, setting forth the above proceedings, alleging among other things that Adee as receiver had collected debts due to Hulst and had taken possession of his books and accounts and of a stock of merchandise, part of which the marshal had seized and turned over to the plaintiff herein, but that Adee withheld from him the moneys collected by him and refused to deliver over the merchandise in his possession or to account to him for it; that when Muxlow recovered the said judgment, and issued the said execution, and when it was returned unsatisfied, and when Herbert H. Muxlow procured Adee to be appointed receiver, and when Adee collected moneys from debtors of Hulst, and when Adee took possession of the books and accounts and merchandise of Hulst, Hulst was insolvent, and in contemplation thereof; that, being so, Hulst, in manner aforesaid, subsequent to the period of four months prior to the filing of the creditors' petition against him, and with the

view and intent, on his part, to give a preference over his other creditors to Muxlow, as a creditor, procured and suffered said judgment against himself in favor of Muxlow to be entered and the appointment of Adee as receiver of the property of Hulst, and the collection by Adee, as receiver, of said moneys then due to Hulst to be made, and suffered and procured, with the intent aforesaid, Adee, as receiver, to take possession of the books and accounts of Hulst and of a portion of his stock of merchandise, and thereby made a transfer of said moneys and property to Muxlow, with the view and intent aforesaid, contrary to the bankruptcy act [of 1867 (14 Stat. 517)]; that at all the times aforesaid. Muxlow and Adee had, each of them, reasonable cause to believe and knew and had notice and knowledge that Hulst was insolvent and in contemplation thereof, and that said transfer of the property of Hulst was made in fraud of the provisions of said act; that said judgment and execution, and all proceedings thereon, including the appointment of Adee as receiver, were fraudulent and void; that said collection of moneys and taking of property by Adee, and said transfer, were not made in the usual and ordinary course of business of Hulst; and that Muxlow and Adee had, each of them, reasonable cause to believe that the same was made with the view, on the part of Hulst, to prevent his property from being distributed under said act, and to defeat its object, and to impair, hinder, impede and delay its operation and effect, and to evade its provisions. The bill prayed that the said judgment and all proceedings thereon, including the appointment of Adee as receiver, be adjudged void; and that a decree be made that the defendants pay to the plaintiff all moneys so collected on the debts and accounts of Hulst, and deliver to the plaintiff all the merchandise of Hulst which so came into their possession, or, in default thereof, pay to the plaintiff the value of such merchandise, and deliver to the plaintiff the said books and accounts of Hulst, and decreeing that Adee. as such receiver, had no title or interest in said property, books or accounts. The evidence showed that Hulst was insolvent when Muxlow recovered his judgment. There were judgments outstanding against him. There was also a suit pending against him and another party, in which suit Hulst alone appeared by Niles & Sherman as his attorneys and put in an answer on March 27th, 1873, which was referred to a referee on May 17th, 1873, and in which judgment was recovered on June 28th, 1873. The claim in that suit was a bona fide debt. The note on which the bankruptcy proceedings were founded fell due April 4th, 1873, and about the 1st of May, 1873, a suit on it was brought against Hulst. He appeared in the suit and put in an answer. The note on which Muxlow obtained his judgment was given by Hulst to Niles for professional services rendered, and it was alleged to have been sold by Niles to Muxlow for a horse valued at $750 and $150

in money. Muxlow knew nothing of Hulst's responsibility and made no inquiries about it of any one but Niles, and Niles did not endorse the note; and within three days Muxlow brought the suit on the note. Other suits were also pending against Muxlow, in which judgments were afterwards recovered against him.

[See Cases Nos. 6,863 and 6.864.]

C. C. & S. F. Prentiss, for plaintiff.
F. D. Smaw, Jr., for Muxlow.
John Maginn, for Adee.

BLATCHFORD, District Judge. The evidence shows that on the 26th of May, 1873, when Daniel Adee was appointed receiver, and took for the benefit of Muxlow the property of Hulst, Hulst, to the knowledge of Niles, who was the attorney for Muxlow in the proceedings, owed, besides the Muxlow judgment for $1,025.63, the following judgments: The Jackson & Chace judgment of January 16th, 1853, for $262.56, owned by Daniel M. Adee, the two Jackson & Chace judgments of April 22d, 1873, for $118.27 and $243.02 respectively, and the Stacey judgment of May 20th, 1873, for $2,014.88. Niles also then knew of the debts sued for in the suit brought by Holden, Hopkins & Stokes for $734.83 and in the suit brought by Flynn for $1,000, both of which suits Niles was defending as attorney for Hulst. Hulst also then owed the judgment recovered by Daniel M. Adee May 21st, 1873, for $605.13. Hulst was, therefore, at the time Daniel Adee was appointed receiver and took the property in question, insolvent, within the meaning of the bankruptcy act. He had failed to pay judgments obtained by default against him. He had no defence and made none to the suits in which such judgments were recovered. Niles knew of this insolvency of Hulst. His knowledge must be imputed to Muxlow. Muxlow is affected by what Niles knew.

The remaining questions are whether Hulst, in suffering Muxlow to obtain his judgment and to have the receiver appointed. and in suffering the receiver to take the property in question for Muxlow's benefit, substantially procured all this to be done, and did so with an intent to prefer Muxlow over other creditors, and whether Muxlow had reasonable cause to believe that Hulst had such intent, and that a fraud on the bankruptcy act was being committed by what was being done.

The defendants cite and rely upon the decision in Wilson v. City Bank, 17 Wall. [84 U. S.] 473, as controlling in the present case. They contend that there was no collusion between Hulst and Muxlow, in reference to the obtaining of the judgment by Muxlow and the appointment of the receiver, and the taking of the property by him; that Hulst was entirely passive; that he could make no defence to the proceedings of Muxlow, which were founded on a just

debt, and made no defence to them; and that there is nothing shown in evidence to displace the lien acquired by Muxlow.

The main point upon which the case of Wilson v. City Bank [supra], was decided was, that the facts of that case did not show any positive or affirmative act of the debtors from which an intent to give a preference to their creditor could be inferred; that the facts merely showed legal proceedings against them, through the whole of which they remained perfectly passive; that they afforded their creditor no facilities to obtain a lien on their property by judgment and execution, and interposed no hindrance; that no positive evidence existed of a wish or a desire on their part to give their creditor a preference; and that, having other creditors with debts due and suable, they neither hindered nor facilitated any one of all their creditors. But the court, in that case, did not hold, nor has it been held in any case, that where there was evidence of affirmative acts done by the debtor which not only directly tended to secure the preference to the particular creditor, but actually resulted in securing it, the intent on the part of the debtor to secure such preference could not be inferred. On the contrary, the language of the court, in that case, is to the effect that where a debtor does a positive act, the consequences of which he knows beforehand, he must be held to intend those consequences; and that when a debtor contributes, by acts of a positive and affirmative character, to the success of the acts of his creditor, it may be inferred that he has an active desire or wish to prefer such creditor to other creditors, when the acts of his creditor are such as to secure such preference.

Applying these principles to the facts of this case, we find that in March, 1873, Hulst was sued by Holden, Hopkins & Stokes, for a just debt, for $784.83 for merchandise sold, to which there was no just defence; and that this suit was defended in such a manner that Muxlow, who brought his suit late in April, 1873, was enabled thereby to obtain a judgment more than a month before Holden, Hopkins & Stokes could obtain their judgment. The act of Hulst in putting in a defence in the suit of Holden, Hopkins & Stokes was an affirmative act. It had the effect, when the defence was continued after Muxlow's suit was brought, and until time enough had elapsed to enable Muxlow to perfect his judgment and his proceedings for a receiver, to secure to Muxlow a preference over Holden, Hopkins & Stokes. Such preference is now asserted in favor of Muxlow, as against the plaintiff, who represents Holden, Hopkins & Stokes as well as other creditors. The intent of Hulst to prefer Muxlow over Holden, Hopkins & Stokes, from and after the time Muxlow brought his suit, must be inferred from the act of Hulst in continuing after that time to defend the suit brought by Holden, Hopkins & Stokes, when it is shown, by the fact that the latter subsequently recovered a judgment, that such defence was groundless. The propriety of this inference is not qualified by any evidence which goes to show that such defence was consistent with any other intent. Hulst interposed a hindrance to Holden, Hopkins & Stokes, by defending their suit; and by continuing to do so after Muxlow brought his suit and until after the receiver was appointed, he facilitated, by an affirmative and positive act, the proceedings of Muxlow. He must be held to have known that his continuance of the defence of the one suit would enable the plaintiff in the other to secure a preference by proceedings which it was lawful to take. He substantially procured to be done by Muxlow what Muxlow did, because his continuing to defend the other suit enabled Muxlow to secure over the plaintiffs in the other suit the preference which otherwise could not have been secured. It would have been equally open to Holden, Hopkins & Stokes to take the same steps which Muxlow did.

That Muxlow had reasonable cause to believe that Hulst had the intent to prefer him, and that a fraud on the bankruptcy act was being committed, is entirely clear. Muxlow is chargeable with all the knowledge which his attorneys had. They were the same persons who as attorneys for Hulst were defending the suit brought by Holden, Hopkins & Stokes. They were acting for Hulst, after they brought Muxlow's suit, in defending the suit brought by Holden, Hopkins & Stokes, and in thus enabling Muxlow to first obtain his judgment and institute the subsequent proceedings, and they were at the same time acting for Muxlow in using the facilities which, on behalf of Hulst, they were thus placing at their own disposal for the benefit of Muxlow. Mayer v. Hermann [Case No. 9,344].

I have considered this case solely as one of a preference void under the bankruptcy act. That is the only subject matter of the bill. There is a large body of evidence, which, it is urged in argument, makes out a case of actual fraud on the part of Hulst, fraud in fact, fraud as against his creditors, an intent to cheat them, and conspiracy with various persons to that end. I express no opinion as to these questions. It is sufficient to say that the allegations of the bill are not directed to anything of the kind.

There must be a decree for the plaintiff according to the prayer of the bill, with a reference to a master to take the necessary account.